**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:12-cv-396-RJC-DSC**

| | |
|---|---|
| **DARRYL LONG, individually and** ) | |
| **on behalf of all other similarly situated** ) | |
| **individuals,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **ORDER** |
| **v.** ) | |
| ) | |
| **CPI SECURITY SYSTEMS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

  **THIS MATTER** comes before the Court on Plaintiff Darryl Long's Motion for

Conditional Class Certification and Court Authorized Notice under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 216(b).  (Doc. No. 43).  For the reasons set forth herein, Plaintiff's

Motion is **GRANTED**.

**I.  BACKGROUND**

  Defendant CPI Security Systems, Inc. ("Defendant" or "CPI") designs, installs, monitors

and services security, fire, CCTV and access control systems for residential and commercial

customers in North Carolina, South Carolina and Georgia.  (Doc. No. 65 at 2).  CPI has branch

offices located in Charlotte, Greensboro and Raleigh, North Carolina; Greenville, South

Carolina; and Atlanta, Georgia.  (Id.).  Plaintiff Darryl Long ("Plaintiff" or "Long") worked as a

residential installation technician and service technician for CPI from May 2007 to May 2011,

primarily in Raleigh, North Carolina.  (Doc. No. 21 at ¶¶ 6-7).  Plaintiff alleges that during his

employment with CPI, he routinely worked more than forty hours per week and that CPI failed

to pay him for his overtime hours. (Id. at ¶ 15).

Plaintiff filed a Complaint on February 9, 2012, (Doc. No. 1), and an Amended

Complaint on March 26, 2012, (Doc. No. 21), in the United States District Court for the Eastern

District of North Carolina. This case was transferred from the Eastern District of North Carolina

to the Western District of North Carolina on June 27, 2012. (Doc. Nos. 30; 31).

Plaintiff alleges in his Amended Complaint that CPI willfully violated the FLSA, 29

U.S.C. § 201 et seq., when it failed to pay Plaintiff and other similarly situated employees

overtime pay for the overtime hours they worked. (Doc. No. 21 at ¶¶ 29, 33). After Plaintiff

filed his Complaint, ten technicians initially signed consent forms to join the lawsuit as opt-in

plaintiffs, nine of which may now be considered by the Court. See (Doc. Nos. 7; 8; 10; 19; 26;

41).[1] On April 11, 2012, CPI filed a Motion to Dismiss Plaintiff's Amended Complaint, which

the Court denied on August 30, 2012. See (Doc. No. 40). CPI filed an Answer on September

12, 2012, in which it denied violating the FLSA and stated that pursuant to 29 U.S.C. § 207(i),

Plaintiff and the proposed putative class are exempt from overtime pay. (Doc. No. 42 at ¶¶ 15,

28, 36).

Plaintiff filed a Motion for Conditional Class Certification and Court Authorized Notice,

(Doc. No. 43), on September 21, 2012. On September 27, 2012, Defendant filed a Motion for

Enlargement of Time, seeking an additional sixty days within which to respond to Plaintiff's

Motion for Conditional Certification "so that it may depose the Plaintiff and nine current Opt-in

---

[1] Consent forms were filed by Cornell Foreman, (Doc. No. 7-1 at 1), Jonathan McNair, (Doc. No. 7-1 at 2), Jason Tellier, (Doc. No. 8-1), Ryan Morris, (Doc. No. 10-1 at 1), Blake Nash, (Doc. No. 10-1 at 2), Timothy Milam, (Doc. No. 19-1 at 1), Robert Ross, (Doc. No. 19-1 at 2), Andre Banks, Jr., (Doc. No. 20-1), James Berish, (Doc. No. 26 at 4), and Mika Elliott, (Doc. No. 41-1). Andre Banks, Jr. withdrew his consent to join the lawsuit on May 25, 2012. See (Doc. No. 29-1).

Plaintiffs, whose testimony is highly relevant to whether this case is suitable for conditional certification as a collective action under the Fair Labor Standards Act." (Doc. No. 44 at 1). Plaintiff opposed the Motion, in part because "of the lenient standard applied to motions for conditional certification." (Doc. No. 46: Certification of Initial Attorneys' Conference at 1); see also (Doc. No. 44: Motion for Enlargement of Time at 4).

On September 28, 2012, the Magistrate Judge entered an order granting Defendant's Motion and "allowing Defendant to conduct limited discovery on the Named and Opt-in Plaintiffs." (Doc. No. 45 at 1) (emphasis added).[2] On November 11, 2012, Plaintiff filed his own Motion for Leave to Take Discovery. (Doc. No. 52). In an order granting Plaintiff's Motion, the Magistrate Judge stated that "the parties may conduct discovery limited to precertification issues through December 31, 2012," and again allowed Defendant additional time to respond to Plaintiff's Motion for Conditional Certification. (Doc. No. 61) (emphasis added). During the limited precertification discovery phase, Defendant took seven depositions, see (Doc. Nos. 65-5: Darryl Long Depo.; 65-10: Jonathan McNair Depo.; 65-11: Richard Gibbey Depo.; 65-12: Timothy Milam Depo.; 65-14: Ryan Morris Depo.; 65-15: Cornell Foreman

---

[2] On October 4, 2012, the parties filed a Certification of Initial Attorneys' Conference, in which they reported to the Court that they could not reach an agreement as to the proposed discovery plan for this case. See (Doc. No. 46 at 1). Defendant sought a bifurcated discovery plan, which envisioned a "notice phase" and a "merits phase" of discovery. Plaintiff opposed the bifurcated plan, and sought to limit Defendant's deposition hours. Defendant disagreed, emphasizing that it was "committed to taking only that discovery permitted by the Magistrate Judge to adequately respond to Plaintiff's Motion for Conditional Certification," and stating that it would not address merits issues during the depositions. (Doc. No. 46 at 3) (emphasis added). The parties further disagreed as to nearly every discovery limit addressed in the scheduling order. In light of the complete disagreement between the parties and, finding that a discovery order was unnecessary at this early stage in the litigation, the Court stayed the issuance of a scheduling order pending a decision by this Court on Plaintiff's Motion for Conditional Certification. See (Oct. 10, 2012 Text Order).

Depo.; 65-16: Robert Ross Depo.), and Plaintiff took three, see (Doc. No. 68-6: Richard Gibbey

Depo., Frank Hardee, Jr. Depo., Jennifer Snellgrove Depo.).

Defendant filed a Response in Opposition to Plaintiff's Motion for Conditional

Certification on January 22, 2013. (Doc. No. 65). Plaintiff replied on February 22, 2013, (Doc.

No. 69), and Defendant filed a Sur-Reply on March 4, 2013, (Doc. No. 72). The Motion for

Conditional Certification is fully briefed and ripe for adjudication.

## II.     FLSA CONDITIONAL CERTIFICATION STANDARD

### A.     Two-Stage FLSA Certification Process

The FLSA "embodies a federal legislative scheme to protect covered employees from

prohibited employer conduct." Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va.

2008). The FLSA allows a plaintiff alleging a violation of the statute to bring suit on his own

behalf or on behalf of other employees who are similarly situated. See 29 U.S.C. § 216(b).

Section 216(b) of the FLSA expressly provides for the procedure for collective actions as

follows:

> An action to recover the liability prescribed [under the FLSA] may be maintained
> against any employer . . . in any Federal or State court of competent jurisdiction
> by any one or more employees for and in behalf of himself or themselves and
> other employees similarly situated. No employee shall be a party plaintiff to any
> such action unless he gives his consent in writing to become such a party and such
> consent is filed in the court in which such action is brought.

Id. Thus, there are two requirements for the certification of a FLSA collective action: (1) the

members of the proposed class must be "similarly situated," and (2) the class members must

"opt-in" by filing their consent to suit. Id.; see also Romero v. Mountaire Farms, Inc., 796 F.

Supp. 2d 700, 705 (E.D.N.C. 2011).

The term "similarly situated" is not defined in the FLSA and the Fourth Circuit has not

4

provided guidance on how the "similarly situated" requirement of § 216(b) should be applied. Gregory v. Belfor USA Group, Inc., No. 2:12CV11, 2012 WL 3062696, at *2 (E.D. Va. July 26, 2012) (slip copy). However, federal district courts in the Fourth Circuit typically follow a two-step approach when deciding whether the named plaintiffs are similarly situated to potential plaintiffs for the purposes of certifying the collective action. See, e.g., Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d 560, 566 (D. Md. 2012); Romero, 796 F. Supp. 2d at 705; Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 562-63 (E.D. Va. 2006).

At the first stage, the court makes a preliminary determination whether to conditionally certify the class based upon the limited record before the court. Romero, 796 F. Supp. 2d at 705. "Consistent with the underlying purpose of the FLSA's collective action procedure, this initial inquiry proceeds under a 'fairly lenient standard' and requires only 'minimal evidence.'" Id. (quoting Choimbol, 475 F. Supp. 2d at 562); see also Romero, 796 F. Supp. 2d at 705 ("The standard for conditional certification is fairly lenient and requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.") (quotation omitted). The primary focus in this inquiry is whether the potential plaintiffs are "'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" De Luna-Guerrero v. The North Carolina Grower's Assoc., 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (quoting Ellen C. Kearns, The Fair Labor Standards Act, § 18.IV.D.3, at 1167 (1999)). If the class is conditionally certified, the court typically authorizes plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right to opt-in. Romero, 796 F. Supp. 2d at 705.

The court proceeds to stage two if the defendant files a motion for decertification, usually

after discovery is virtually complete. <u>Choimbol</u>, 475 F. Supp. 2d at 563 (citation omitted). Accordingly, throughout the second stage, courts apply a heightened fact specific standard to the "similarly situated" analysis. <u>Id.</u> Upon a determination that the plaintiffs established the burden of proving they are "similarly situated," the collective action proceeds to trial. <u>Id.</u> On the contrary, if the court determines that the plaintiffs are in fact, not "similarly situated," the class is decertified and the original plaintiffs may proceed on their individual claims. <u>Id.</u>

      B.    <u>Beyond the Two-Stage Certification Process</u>

      CPI asks this Court to apply an intermediate standard of analysis because the parties have conducted some discovery, because one judge in this District applied the intermediate standard, and because Plaintiff allegedly conceded that this is the appropriate standard. The intermediate approach "requires a more stringent showing in cases where some, but not all, discovery has been completed, to determine whether Plaintiffs have demonstrated that they and the potential opt-ins are similarly situated." <u>Blaney v. Charlotte-Mecklenburg Hosp. Auth.</u>, 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *4 (W.D.N.C. Sept. 16, 2011) (Mullen, J.); <u>see also</u> <u>Bunyan v. Spectrum Brands, Inc.</u>, 07-CV-0089-MJR, 2008 WL 2959932, at *4 (S.D. Ill. July 31, 2008) (applying the intermediate standard where the parties had engaged in "substantial discovery"). The Court declines to apply the intermediate standard in this case for several reasons.

      First, although one judge in this District applied the intermediate standard, <u>see</u> <u>Blaney</u>, 2011 WL 4351631, the majority of courts in the Fourth Circuit adhere to the two-stage analysis contemplated by § 216(b). <u>See, e.g.</u>, <u>Essame v. SSC Laurel Operating Co. LLC</u>, 847 F. Supp. 2d 821, 826-27 (D. Md. 2012) (declining to apply an intermediate standard of review after the parties engaged in some limited initial discovery); <u>Butler</u>, 876 F. Supp. 2d at 566-67 (rejecting

the defendants' proposal to apply an intermediate standard where the parties had completed some discovery); Romero, 796 F. Supp. 2d at 705 (adhering to the two-stage analysis); Choimbol, 475 F. Supp. 2d at 562-63 (same). But see Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011) (collecting cases applying the intermediate standard while recognizing that "courts have had a difficult time elucidating an intermediate, or hybrid, standard that falls between the lenient first-stage and the strict second-stage review"). This Court does not agree with CPI's assessment that a single ruling indicates that "[t]his District has adopted the 'Intermediate Approach.'" See (Doc. No. 65 at 12).[3]

Further, Blaney is distinguishable. In Blaney, the parties filed a case management plan that anticipated some discovery was to be conducted before the plaintiff filed her conditional certification motion. Therefore, in preparation of the plaintiff's motion, the parties exchanged interrogatories and document requests and took depositions. See Blaney, 2011 WL 4351631, at *5. In determining to apply the intermediate standard, the Blaney court emphasized that "[t]he critical point [was] that the parties agreed and anticipated that some discovery was to occur prior to the [plaintiff's] Certification Motion coming due . . . ." Id. Here, there was no such agreement. In fact, quite the opposite was true. See (Doc. No. 46 at 1) ("The parties disagree on the proposed discovery plan for this case."). Additionally, the parties have not exchanged interrogatories or document requests. The Court finds that the limited precertification discovery contemplated by the Magistrate Judge in this case, and performed by the parties, does not rise to

---

[3] Although this District has considered very few motions for conditional certification, and did not grant conditional certification in those sparse cases, Plaintiff demonstrates that the Eastern District of North Carolina routinely grants conditional certification motions. See (Doc. No. 43-1 at 7 n.5) (collecting cases).

the level of discovery performed by parties in other cases where courts applied the intermediate standard. See, e.g., Bunyan, 2008 WL 2959932, at *4 (applying the intermediate standard where the parties engaged in more than eleven months of "substantial discovery" by the time the plaintiffs filed their conditional certification motion, which included exchanging interrogatories, conducting depositions, and exchanging a large number of documents).

There are also "sound substantive reasons" for declining to apply an intermediate standard upon the completion of just some discovery. Essame, 847 F. Supp. 2d at 827. First, courts have reasoned that "'when the parties have engaged in only limited discovery, it is premature to conclude that the evidence is representative of what the plaintiffs would present given further discovery.'" Id. (quoting Helmert v. Butterball, LLC, No. 4:08CV00342 JLH, 2009 WL 5066759, at *6-7 (E.D. Ark. Dec. 15, 2009)). "A second justification is that 'the notice stage analysis places the burden of proof on the plaintiff, but the opt-in stage analysis, which typically follows a motion to decertify, places the burden of proof on the defendant; merging the two stages of analysis would inevitably skew the burden of proof.'" Id. (quoting Helmert, 2009 WL 5066759, at *6). "These concerns have full applicability to the case at bar and caution against ratcheting up the standard of review because of the limited discovery that the Parties have conducted." Id.

This Court, like the Essame court, is also concerned with applying an intermediate standard here for policy reasons. As the Essame court explained:

> Intermediate connotes in the middle; therefore, the standard seems ideally suited for situations in which the parties have conducted approximately half of the discovery. But what about cases where—as may be the case here—the parties have conducted only a third, a quarter, or even a fifth discovery? Are courts still to apply the intermediate standard? [Defendant] might call for a sliding scale in which the Court would calibrate the standard to the quantum—and perhaps

8

quality—of conducted discovery.  Assuming this approach is analytically sound, the Court would nonetheless display disinclination to inject this much flexibility—and, by extension, uncertainty—into the remedial scheme that § 216(b) contemplates.

847 F. Supp. 2d at 827.  Here, the parties have conducted less than three months of limited precertification discovery.  Plaintiff conducted three depositions and Defendant conducted seven.  The Court hesitates to speculate how much discovery will be performed in this FLSA collective action, but it appears likely that the discovery thus far completed is just a fraction of the total anticipated discovery.

Additionally, Plaintiff opposed Defendant's request for limited precertification discovery because Plaintiff anticipated that Defendant was seeking discovery in a backdoor attempt to persuade this Court to utilize the intermediate standard.  See (Doc. Nos. 44 at 4; 52 at 1-3).  It is significant that Plaintiff did not request or agree to precertification discovery, as the plaintiffs did in Blaney.  Instead, Plaintiff has consistently opposed precertification discovery:

> In fact, the parties specifically disagreed on the proposed discovery plan because Plaintiff had already filed his conditional certification motion.  Plaintiff had also opposed Defendant's request for time to conduct discovery before it had to respond because of the lenient standard.  Since filing his motion, Plaintiff has repeatedly argued that discovery was unnecessary for the Court to decide whether Plaintiff is similarly situated to putative class members, and only conducted some limited discovery (three depositions and no written discovery) after Defendant refused to agree to not argue for an intermediate standard simply based on limited discovery it had been permitted.

(Doc. No. 68 at 6) (citations omitted).  It would be a windfall for CPI if it is allowed to obtain precertification discovery over Plaintiff's objections and then receive the benefit of the intermediate standard as a result of such discovery.

Finally, CPI argues that Plaintiff implicitly conceded that the Court should apply the intermediate standard in his Motion for Leave to Take Discovery.  (Doc. No. 65 at 2).  In his

Motion, Plaintiff argued as follows:

> While employee declarations are more than sufficient to show that conditional certification is warranted under the lenient standard, a greater evidentiary showing may be necessary under a higher standard for certification that takes place after the parties have had the benefit of some discovery. Seizing upon this, Defendant moved for and was granted time to take discovery before responding to Plaintiff's motion for certification. Defendant also recently made clear its intent to use this discovery to argue for a higher standard for certification while at the same time refusing to allow Plaintiff any discovery whatsoever to rebut Defendant's opposition and strengthen Plaintiff's motion . . . . Plaintiff seeks leave to take discovery both to adequately respond to Defendant's opposition to certification and also to strengthen Plaintiff's motion should the Court be inclined to apply a higher rather than lenient standard.

(Doc. No. 52 at 1, 3). It appears to the Court that Plaintiff was not conceding the intermediate standard, but was instead expressing his frustration at the conundrum of attempting to retain the lenient standard while sufficiently preparing a response to CPI's Opposition. The Court further notes that regardless of any alleged concession by Plaintiff, it is for this Court, and not the parties, to decide which standard should be utilized.

Because the weight of Fourth Circuit authority is in favor of the traditional two-stage approach, and because the Court is concerned with injecting "this much flexibility—and, by extension, uncertainty—into the remedial scheme that § 216(b) contemplates," this Court declines to use the intermediate standard in the case at bar. Essame, 847 F. Supp. 2d at 827.

## III. DISCUSSION

### A. Similarly Situated

Plaintiff moves the Court to conditionally certify the following opt-in class:

> All non-hourly current and former technicians who worked for Defendant CPI Security Systems, Inc. at any time at any of Defendant's locations from [three years prior to date notice issues] to the present.

(Doc. No. 68-2 at 3) (emphasis in original). In support of his Motion, Plaintiff argues that he has

demonstrated sufficiently that he has met the "similarly situated" standard. Plaintiff has

submitted his own declaration, and the declarations of seven opt-in plaintiffs, five of which may

now be considered by the Court,[4] in which all plaintiffs allege that they and others were required

to work overtime without pay while employed by CPI. Specifically, Plaintiff's declarations

show that he and the opt-in plaintiffs all worked as technicians for CPI.[5] As CPI technicians,

their responsibilities included installing, servicing and/or repairing CPI's security systems.[6] The

technicians were not responsible for selling the security systems.[7] CPI paid most[8] of its

technicians a fixed amount per job completed.[9] Plaintiff's declarations show that he and the opt-

in plaintiffs were regularly scheduled to work five to six days per week, working well over forty

hours per workweek.[10] CPI knew or should have known that technicians were working overtime

---

[4] On March 20, 2013, the Magistrate Judge granted Defendant's Motion to Strike Declarations, (Doc. No. 53), and ordered the declarations of Blake Nash and James Berish stricken from Plaintiff's Motion for Conditional Class Certification. See (Doc. No. 73 at 1).

[5] (Doc. Nos. 43-1 at 5; 43-4 at 2-33: Foreman Decl. at ¶ 3; Long Decl. at ¶ 3; McNair Decl. at ¶ 3; Milam Decl. at ¶ 3; Ross Decl. at ¶ 3; Tellier Decl. at ¶ 3).

[6] (Doc. Nos. 21: Am. Complaint at ¶ 11; 43-1 at 5; 43-4 at 2-33: Foreman Decl. at ¶ 7; Long Decl. at ¶ 7; McNair Decl. at ¶ 7; Milam Decl. at ¶ 7; Ross Decl. at ¶ 7; Tellier Decl. at ¶ 7; 43-5: Job Descriptions).

[7] (Doc. Nos. 43-1 at 5; 43-4 at 2-33: Foreman Decl. at ¶ 7; Long Decl. at ¶ 7; McNair Decl. at ¶ 7; Milam Decl. at ¶ 7; Ross Decl. at ¶ 7; Tellier Decl. at ¶ 7).

[8] Plaintiff writes that "all technicians" are paid on a piece rate basis in his initial Motion, (Doc. No. 43-1 at 5), but Defendant responds that all Business Solutions Service Technicians are classified as non-exempt and paid hourly, and one of its Residential Service Technicians is classified as non-exempt, (Doc. No. 65 at 7). Thus, most of CPI's 150 technicians appear to be classified as exempt and paid on a piece rate basis.

[9] (Doc. Nos. 43-1 at 5; 43-4 at 2-33: Foreman Decl. at ¶¶ 9, 11; Long Decl. at ¶¶ 9, 11; McNair Decl. at ¶¶ 9, 10; Milam Decl. at ¶¶ 9, 11; Ross Decl. at ¶¶ 9, 11; Tellier Decl. at ¶¶ 9, 11).

[10] (Doc. Nos. 43-1 at 6; 43-4 at 2-33: Foreman Decl. at ¶ 12 (60-70 hours); Long Decl. at ¶ 12 (50-60 hours); McNair Decl. at ¶ 11 (60-70 hours); Milam Decl. at ¶ 12 (50-60 hours); Ross Decl. at ¶ 12 (60-65 hours); Tellier Decl. at ¶ 12 (60-65 hours)).

hours because Plaintiff and the opt-in plaintiffs were required to "clock in" and "clock out" each

day.[11]  Despite working over forty hours per week, Plaintiff and the opt-in plaintiffs state that

they were not paid for their overtime hours because they were classified as "exempt" under the

"retail sales exemption," codified in 29 U.S.C. § 207(i).[12][13]

In response to Plaintiff's arguments, CPI contends that the putative class members are not

similarly situated because (1) CPI's technicians do not uniformly perform the same duties; and

(2) there is no common pay plan that applies to the entire putative class.[14]  First, CPI contends

that because it has six unique classifications of technicians, and each classification has its own

---

[11] (Doc. No. 43-1 at 6; Ans. ¶ 19; Foreman Decl. at ¶ 13; Long Decl. at ¶ 13; McNair Decl. at ¶ 12; Milam Decl. at ¶ 13; Ross Decl. at ¶ 13; Tellier Decl. at ¶ 13); see also (Doc. No. 65-3: Decl. of current CPI Vice President of Human Resources Jennifer Snellgrove at ¶ 5) ("Over the past three (3) years, there are CPI technicians that have averaged between 50 to 60 hours per week.").

[12] 29 U.S.C. § 207(i) provides that "[n]o employer shall be deemed to have violated [the FLSA] by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services."

[13] See (Doc. Nos. 43-1 at 6; 43-4 at 2-33: Decl. at ¶ 14; Long Decl. at ¶ 14; McNair Decl. at ¶ 13; Milam Decl. at ¶ 14; Ross Decl. at ¶ 14; Tellier Decl. at ¶ 14); see also (Doc. No. 42: Answer at ¶ 36) ("Defendant avers that pursuant to 29 U.S.C. § 20[7](i) of the FLSA, Plaintiff and the proposed putative class are exempt from overtime pay.").

[14] CPI actually leads with a merits-based argument in its Opposition to Plaintiff's Motion for Conditional Certification.  See (Doc. No. 65 at 1) ("Importantly, Plaintiff's claim that CPI has improperly misclassified him and the technicians he seeks to represent at 7(i) exempt is in stark contrast to the U.S. Department of Labor, Wage and Hour Division's conclusions on two separate occasions that CPI properly classified those technicians as 7(i) exempt.").  However, as CPI is aware, see (Doc. Nos. 46 at 3; 68-6 at 18-19), it is not appropriate for the Court to address the merits of this case at the motion for conditional certification phase.  See Gregory, 2012 WL 3062696, at *5 (E.D. Va. July 26, 2012) ("[A]t this stage, the Court declines Defendant's invitation to engage in resolving factual disputes, decide substantive issues going to the merits of the case, or make credibility determinations.") (quotation omitted); Butler, 876 F. Supp. 2d at 572 (noting that "the merits of certain aspects of Plaintiffs' claims . . . are not appropriate to resolve at the conditional certification stage").

particularized job duties and tasks, the putative class members are not sufficiently similarly situated.  See (Doc. No. 65 at 3-6) (describing in great detail the job duties for each of the following six technician classifications: Residential Installation Technicians, Residential Service Technicians, Business Solutions Installation Technicians, Business Solutions Service Technicians, New Construction Technicians, and Upgrade Technicians).  But as much as CPI highlights the distinctions between the technician classifications, it states that "no two individual technicians, even with in the same classification, necessarily perform the same duties" and "some CPI technicians perform tasks across various classifications."  (Doc. No. 65 at 6).  This fluidity, and thus commonality, undercuts CPI's argument that the six technician classifications are so different from one another as to preclude class certification.

CPI also emphasizes the differences between "installing," "servicing," and "repairing" security systems in arguing that the putative class members are not sufficiently similarly situated with regard to their job duties.  See (Doc. No. 65 at 3).  When faced with similar facts, however, one court in this Circuit found that these distinctions in job duties were not sufficient to prevent conditional certification.  See Butler, 876 F. Supp. 2d at563 (granting conditional certification for "technicians who previously installed, upgraded, and serviced DirectTV equipment at customer locations in Maryland, Virginia, and the District of Columbia").[15]  Further, a fact-

---

[15] See also Edwards v. Multiband Corp., No. 10-2826 MJD/JJK, 2011 WL 117232 (D. Minn. Jan. 13, 2011) (certifying class of satellite technicians who were paid on a piece rate basis); Monroe v. FTS USA, LLC, 257 F.R.D. 634, 639 (W.D. Tenn. 2009) (granting conditional certification for plaintiffs and other piece-rate paid cable installers); Musarra v. Digital Dish, Inc., No. C2-05-545, 2008 WL 818692 (S.D. Ohio Mar. 24, 2008) (granting conditional certification for technicians whose primary responsibilities consist of building, installing, repairing, and removing digital satellite equipment for DISH Network customers); Balarezo v. NTH Connect Telecom, Inc., No. 07-5243, 2008 WL 552474 (N.D. Cal. May 2, 2008) (granting

intensive inquiry is inappropriate at the notice stage, as Plaintiff is seeking only conditional

certification.  See Essame, 847 F. Supp. At 826 (a fact-intensive inquiry "delves too deeply into

the merits of the dispute; such a steep plunge is inappropriate for such an early stage of a FLSA

collective action"); see also McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 470 (E.D.N.C.

2010) ("[C]courts have routinely recognized that where an employer has a common practice of

failing to pay employees for all hours worked, factual distinctions of the type claimed by

[defendant] provide no basis to deny initial certification of a collective action under the FLSA.").

CPI will have an opportunity to argue that individual inquiries predominate over common issues,

based upon the discovery, at the second phase.  See, e.g., Syrja v. Westat, Inc., 756 F. Supp. 2d

682, 686 (D. Md. 2010) ("In the second stage, following the conclusion of discovery, the court

engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] 'similarly

situated' in accordance with the requirements of § 216, and renders a final decision regarding the

propriety of proceeding as a collective action.") (quotation omitted); Quinteros v. Sparkle

Cleaning, Inc., 532 F. Supp. 2d 762, 772 n.6 (D. Md. 2008) ("the Court will entertain, after

discovery has largely been complete, a motion for 'decertification' by the Defendants").

Accordingly, Defendant's argument is premature.  McLaurin, 271 F.R.D. at 470 (Defendant's

"objections are premature and are more appropriately considered during the second stage of the

collective action certification"); see also Salomon v. Adderley Indus., Inc., 847 F. Supp. 2d 561,

---

conditional certification of a collective action brought by cable installation technicians who
challenged their piece-rate compensation under the FLSA and applicable state law); Kautsch v.
Premier Commc'ns, 504 F. Supp. 2d 685, 687-90 (W.D. Mo. 2007) (granting a motion for
conditional class certification of similarly situated field technicians that installed satellite
television services and were compensated under a piece-rate system).  Given the obvious
similarities to the issues in the present case, this Court finds the other courts' rulings
conditionally certifying classes of technicians highly relevant.

565 (S.D.N.Y. 2012).

CPI's second argument, that its separate and particularized compensation plans for each of its classifications will mandate highly individualized inquiries into each plaintiff's claim, gave the Court pause because this may indeed pose problems down the road. CPI explains that "[t]echnicians who perform tasks across the various classifications are not paid pursuant to a single compensation plan." (Doc. No. 65 at 9). "Instead, they are paid pursuant to the specific compensation plan commensurate with the particular task they are performing. Thus, in any given day, a particular technician can be subject to numerous pay plans." (Id.). Further, CPI states that while most of its technicians are classified as exempt, the following individuals are paid hourly and are not considered exempt from overtime pay: (1) one Residential Service Technician who worked in Asheville, North Carolina; (2) all Business Solutions Service Technicians; (3) until recently, all Atlanta, Georgia technicians; and (4) all newly hired technicians who receive hourly training pay for the duration of their training period. (Doc. No. 65 at 7; Gibbey Decl. at ¶ 17). This type of class manageability argument, however, is more appropriate at the motion to decertify phase. As discussed further below, the Court finds that rather than denying conditional certification, the appropriate step is to redefine the putative class.

Finally, and most importantly, the Court finds that the putative class members are similarly situated with regard to CPI's policy and practice of treating them as uniformly exempt under the FLSA's "retail sales exemption" codified in 29 U.S.C. § 207(i). CPI appears to agree that, with the exception of the Business Solutions Service Technicians and one Residential Service Technician, all of its technicians are classified as exempt from overtime pay. See (Doc. No. 65 at 7). The relevant issue here "is not whether Plaintiffs and [potential opt-in plaintiffs]

were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week." <u>Salomon</u>, 847 F. Supp. 2d at 565; <u>see also</u> <u>De Luna-Guerrero</u>, 338 F. Supp. 2d at 654 ("In FLSA actions, persons who are similarly situated to the plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment o[f] . . . overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical. Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination.") (quotation omitted). Plaintiff's Motion for Conditional Class Certification and Court Authorized Notice is **GRANTED**.[16]

B.      <u>Proposed Class Definition</u>

Plaintiff initially defined the class for which he seeks conditional certification under § 216(b) as follows:

> All persons who worked as an installation technician or service technician (or other job title performing similar duties) for Defendant at any time at any of Defendant's locations from three years prior to the filing of this Complaint through entry of judgment (the "FLSA Collective").

(Doc. No. 21: Amended Complaint at ¶ 22). In its response to Plaintiff's Motion for Conditional

---

[16] There are also sound policy reasons for granting Plaintiff's Motion for Conditional Certification. The FLSA expressly authorizes employees to bring collective actions "in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action allows plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [illegal] activity." <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989). "These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." <u>Id.</u>; <u>see also</u> <u>Shaffer v. Farm Fresh, Inc.</u>, 966 F.2d 142, 147 (4th Cir. 1992) (quoting <u>Hoffman</u> and remanding to the district court for "approval of an appropriate notice statement and consent form").

Certification, CPI argued, inter alia, that not all of its technicians were classified as exempt. For instance, CPI states, all newly hired technicians are considered non-exempt and receive hourly "training pay" for the duration of their individualized training period. (Doc. No. 65 at 7; Gibbey Decl. at ¶ 17). Additionally, the following CPI technicians are not classified as exempt: (1) one Residential Service Technician who worked in the Asheville, North Carolina area; (2) all Business Solutions Service Technicians; and (3) until recently, all Atlanta, Georgia technicians. (Id.). In response to CPI's assertions, Plaintiff amended his proposed class definition as follows:

> All non-hourly current and former technicians who worked for Defendant CPI Security Systems, Inc. at any time at any of Defendant's locations from [three years prior to date notice issues] to the present.

(Doc. No. 68-2 at 3) (emphasis in original). While the Court finds that Plaintiff's amended class definition effectively excludes the Business Solutions Service Technicians and the one non-exempt Residential Service Technician in Asheville, it does not address the non-exempt training hours and the recent change in classification for the Atlanta, Georgia technicians. CPI has requested that "in the event the Court decides to conditionally certify a class, the Court order that the parties confer in an attempt to agree upon the content and form of notice." (Doc. No. 65 at 25). While recognizing the class manageability issues raised by CPI, the Court finds that rather than denying Plaintiff's Motion for Conditional Certification, the appropriate step is to redefine the putative class. The Court will, therefore, require the parties to submit a joint letter describing the desired language of the opt-in notice to be delivered to the conditional collective action members, highlighting any disagreements on language requiring attention by the Court. See Hoffmann-La Roche, 493 U.S. at 170 ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural

authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.").

## III.     CONCLUSION

At this stage, the Court is determining whether Defendant's non-hourly technicians were allegedly subject to a common practice which may have resulted in FLSA overtime violations. Plaintiff has made a modest factual showing that the putative plaintiffs worked as technicians for CPI, performed the same general duties, were subject to the same piece-work-based compensation scheme and were not paid overtime.  See Salomon, 847 F. Supp. 2d at 564-65 (granting cable technicians' motion for conditional certification as a collective action upon a modest factual showing).  The proper inquiry at this stage is simply "whether plaintiffs are similarly situated with respect to their allegations that the law has been violated." Creely, 789 F. Supp. 2d at 840 (emphasis in original; quotation omitted).  Plaintiff has submitted sufficient evidence to support and advance his allegations.

**IT IS, THEREFORE, ORDERED** that:

1.      Plaintiff's Motion for Conditional Class Certification and Court Authorized Notice, (Doc. No. 43), is **GRANTED**;

2.      Within ten (10) days of the entry of this Order, counsel are directed to submit a joint letter to the Court describing the desired language of the opt-in notice to be delivered to the conditional collective action members, highlighting any disagreements on language requiring attention by the Court;

3.      Within fourteen (14) days of the entry of this Order, the parties or their counsel

18

shall confer and conduct an Initial Attorney's Conference.  See FED. R. CIV. P. 16(b); 26(f).  Pursuant to Local Rule 16.1(B), within seven (7) days of the parties' conference, the parties shall complete and file a revised Certification of Initial Attorney's Conference, which shall include a proposed discovery plan.  The parties are encouraged to work together to come up with an agreed upon discovery plan; and

4.      To facilitate settlement, within thirty (30) days of the Court's approval of the opt-in notice, Plaintiff shall provide Defendant with the number of unpaid overtime hours owed plaintiffs, if known, with supporting documentation, if any.

Signed: May 17, 2013

Robert J. Conrad, Jr.
Chief United States District Judge